**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division**

ANGELA CALLOWAY,

        Plaintiff,

v.                                              CIVIL ACTION NO.  5:16cv00081

COMMONWEALTH OF VIRGINIA, *et al.*,

        Defendants.

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

COME NOW Defendants Commonwealth of Virginia, John A. Woodson, Edward O. Hoskie, Nicholas S. Shires, Benjamin J. Lokey, and Jeffrey L. Brown (hereinafter collectively referred to as "Defendants"), by counsel, and moves this Court to dismiss this matter pursuant to Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6) for the reasons set forth more fully below.

**INTRODUCTION**

On or about December 8, 2016, Plaintiff, Angela Calloway, ("Plaintiff" or "Calloway"), filed this action pursuant to 42 U.S.C. § 1983, the Virginia Tort Claims Act, and the common law of Virginia alleging violation of her constitutional rights under the Fourth Amendment, Fifth Amendment, Article 1, Sections 10 and 11 of the Constitution of the Commonwealth of Virginia, and Section 19.2-59.1 of the Code of Virginia.  *See* Compl. ¶ 1 (ECF No. 1).  Specifically, Calloway claims that she was coerced to submit to a strip search by Defendants on July 17, 2016 at Augusta Correctional Center ("ACC").  *Id.* at ¶ 2.

Because the Commonwealth of Virginia is entitled to Eleventh Amendment immunity,

this Court lacks jurisdiction to adjudicate the supplemental VTCA claim against the Commonwealth.  Moreover, the complaint fails to state a sufficient factual basis of liability against Defendants Woodson, Hoskie, Shires, Lokey, and Brown, as it does not allege sufficient facts to support a finding of any of the alleged constitutional or state law claims as to any of the defendants.  Therefore, Plaintiff's Complaint fails to state a viable claim against any of the named parties, and Defendants request that this suit be dismissed for failure to state a claim upon which relief can be granted.

## STATEMENT OF UNDISPUTED FACTS

"[W]hen ruling on a defendant's motion to dismiss, a [trial] judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).  So viewed, and as pertinent to this motion, the essential allegations of the complaint are as follows:

1.      At all pertinent times herein, Defendants Woodson, Hoskie, Shires, Lokey, and Brown were employed at ACC.

2.      On the afternoon of July, 17, 2016, Plaintiff was at the ACC for an inmate visit. Compl. ¶ 27.

3.      After making it through security, Plaintiff was seated at Table 29 across from the inmate she came to visit.  *See* Compl. ¶¶ 31-40.

4.      Plaintiff's visit with the inmate was interrupted by Defendants Lokey and Brown, when she was asked to stand up and escorted out of the visitation room.   Compl. ¶ 43.

5.      Plaintiff was informed that she was observed on camera trying to unbutton her pants.  Compl. ¶ 45.

6.      It was explained to Plaintiff that sometimes people try to bring drugs into ACC;

therefore, they are very cautious.  Compl. ¶ 46.

7.      Plaintiff was informed that under the circumstances she would have to submit to a strip search or be prohibited from visiting ACC.  Compl. ¶ 52.

8.      Plaintiff was given a consent form, which she read and signed prior to the strip search being conducted.  Compl. ¶¶ 55, 58.

## ARGUMENT AND AUTHORITIES

**A.      Legal Standards**

1.   Rule 12(b)(1):  Subject Matter Jurisdiction

Federal district courts are courts of limited jurisdiction.  "Thus, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed."  *United States v. Jadhay*, 555 F.3d 337, 347 (4th Cir. 2009).  A challenge to a court's subject matter jurisdiction can be raised at any time and is properly considered on a motion under Rule 12(b)(1) of the *Federal Rules of Civil Procedure*.   The burden of proving subject matter jurisdiction in response to a Rule 12(b)(1) motion rests with the plaintiff, the party asserting jurisdiction.  *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

2.   Rule 12(b)(6):  Failure to State a Claim

 "[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citing *Twombly*, 550 U.S. at 556); *see also* Fed. R. Civ. P. (8)(a)(2); *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009).  Also, although the Court must consider all of the factual allegations of the complaint as true, the Court is not bound to accept a legal conclusion couched as a factual assertion, *Iqbal*, 556 U.S. at 663-64, nor should the Court accept a plaintiff's "unwarranted deductions," "rootless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations." *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996).

Generally, a Rule 12(b)(6) motion to dismiss "cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  However, a court may determine the merits of an affirmative defense raised in a motion under Rule 12(b)(6) if "all facts necessary to the affirmative defense clearly appear[] on the face of the complaint." *Id.*; *see also United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013); *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).  For this reason, if it is apparent from the allegations of the complaint that a party is entitled to immunity from suit, this defense may be raised through a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Ostrzenski v. Seigel*, 177 F.3d 235, 253 (4th Cir. 1999) (affirming Rule 12(b)(6) dismissal of a § 1983 suit for failure to state a claim where the defendant raised the defense of quasi-judicial immunity); *see also Smith v. McCarthy*, 349 Fed. App'x 851 (4th Cir. 2009) (per curiam) (affirming Rule 12(b)(6) dismissal of a § 1983 suit for failure to state a claim where the various defendants raised the defenses of qualified immunity, absolute prosecutorial immunity, and Eleventh Amendment sovereign immunity).

**B.      The Commonwealth of Virginia is entitled to Eleventh Amendment immunity; therefore, this Court lacks subject matter jurisdiction to adjudicate the supplemental VTCA claim.**

Plaintiff's VTCA claim should be dismissed as this Court lacks subject matter jurisdiction to adjudicate her claim.

The Eleventh Amendment of the United States Constitution provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI.  "The Eleventh Amendment, though without express language to this effect, has [also] been interpreted to bar suits brought by a citizen against his own state." *Equity in Ath., Inc. v. Dep't of Educ.*, 639 F.3d 91, 107 n.12 (4th Cir. 2011).  In this manner, the Eleventh Amendment protects the "integrity retained by each state in our federal system," *Hess v. Port Authority Trans-Hudson Co.*, 513 U.S. 30, 39 (1994), and "its command cannot be disregarded," *Booth v. Maryland*, 112 F.3d 139, 143 (4th Cir. 1997).

The "ultimate guarantee of the Eleventh Amendment is that non-consenting states may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. Ala. v. Garrett*, 31 U.S. 356, 363 (2001).  This protection also precludes a federal district court from exercising supplemental jurisdiction over a state-law claim for which the sovereign has not waived immunity. *See County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 251 (1985) ("The Eleventh Amendment forecloses . . . the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State."); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment[.]"); *Missouri v. Fiske*, 290 U.S. 18,

27 (1933) (holding that the Eleventh Amendment applies to bar suit against a sovereign even where the asserted basis for that jurisdiction is "ancillary and supplemental"); *In re Sec'y of the Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1144-45 (4th Cir. 1993) (holding that the district court lacked jurisdiction to consider a claim against a state official, noting that, even if the claim "might otherwise have fallen within the court's ancillary or pendent jurisdiction, the Eleventh Amendment deprived the district court of jurisdiction to entertain that claim, because it was in effect a claim against the state itself").

As the Fourth Circuit has recognized, the Commonwealth of Virginia, when enacting the Virginia Tort Claims Act ("VTCA"), did not waive its Eleventh Amendment immunity.  *See McConnell v. Adams*, 829 F.2d 1319, 1329 (4th Cir. 1978) ("The Virginia Torts Claims Act while generally waiving sovereign immunity for tort claims filed in state courts, does not waive the state's Eleventh Amendment immunity."); *see also Haley v. Va. Dep't of Health*, No. 4:12cv00016, 2012 U.S. Dist. LEXIS 161728, at *16 (W.D. Va. Nov. 13, 2012).  Accordingly, a claim under the VTCA may not "be brought in federal court in the first instance," and, "[e]ven if a district court could exercise supplemental jurisdiction over it, such an assertion of jurisdiction would violate the terms of the state's agreement to limit its sovereign immunity."  *Creed v. Virginia*, 596 F. Supp. 2d 930, 938 (E.D. Va. 2009); *see also Sharp v. Virginia*, No. 3:09cv834, 2010 U.S. Dist. LEXIS 39722 (W.D. Va. Apr. 22, 2010) (remanding VTCA claim to state court, reasoning that removal jurisdiction was absent and that the court could not exercise supplemental jurisdiction over a state-law claim against the Commonwealth); *Francis v. Woody*, No. 3:09cv235, 2009 U.S. Dist. LEXIS 43599, at *32-34 (E.D. Va. May 22, 2009) (granting motion to dismiss state-law claims under the VTCA on the basis that the Eleventh Amendment precluded the court's consideration of those claims).

Because the Commonwealth of Virginia has not waived its Eleventh Amendment immunity, this Court lacks jurisdiction to consider the supplemental claim brought pursuant to the Virginia Tort Claims Act.  Moreover, under the Virginia Tort Claims Act contained in § 8.01-195.1 *et seq*. of the Code of Virginia, the only proper party is the Commonwealth of Virginia.  Therefore, the VTCA claims against the individually named officers and officials must be dismissed as well.

Accordingly, Defendants requests that the negligence claims against them be dismissed for lack of jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).[1]

## C.     Plaintiff has not alleged any personal involvement against Defendant Woodson; therefore the claims against this Defendant should be dismissed.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988).  A plaintiff, further, must affirmatively allege that the named defendants were personally involved in the alleged violations of his constitutional rights. *See e.g.*, *Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Barrow v. Bounds*, 498 F.2d 1397 (4th Cir. 1974).

It is important to note that *respondeat superior* is not available in actions brought under

---

[1] The Fourth Circuit has noted that it is not clear "whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000).  It has been noted, however, that "[t]he recent trend . . . appears to treat Eleventh Amendment Immunity motions under Rule 12(b)(1)." *Haley v. Va. Dep't of Health*, No. 4:12cv00016, 2012 U.S. Dist. LEXIS 161728, at *5 n.2 (W.D. Va. Nov. 13, 2012).  The underlying rationale is that, "although the Eleventh Amendment immunity is not a 'true limit' of [the] Court's subject matter jurisdiction, . . . it is more appropriate to consider [this] argument under Fed. R. Civ. P. 12(b)(1) because it ultimately challenges this Court's ability to exercise its Article III power." *Beckham v. AMTRAK*, 569 F. Supp. 2d 542, 547 (D. Md. 2008) (cited in *Haley*, 2012 U.S. Dist. LEXIS 161728, at *5 n.2).

42 U.S.C. § 1983.  *Iqbal*, 556 U.S. at 676.  Rather, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.*; *see Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations"); *see also Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995).  When examining this complaint, therefore, the appropriate inquiry is whether the plaintiff has sufficiently alleged facts from which it could be determined that Defendant Woodson, through his own conduct, violated Plaintiff's constitutional rights.

 Overall, "[t]he plaintiff . . . assumes a heavy burden of proof in supervisory liability cases," for "[h]e must not only demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Slakan*, 737 F.3d at 372 (quoting *Orpiano*, 632 F.2d at 1101) (alteration in original).  "[H]e cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, . . . [n]or can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct."  *Id.*

Here, Plaintiff has named Woodson as a Defendant, but according to Plaintiff's own allegations Woodson was not at the institution on the day of the alleged incident and was not involved with the alleged incident.  Compl. ¶ 87.  Because Plaintiff's claims against Defendant fail to allege a plausible factual basis for a finding of any personal involvement on behalf of Defendant or any supervisory liability,   Therefore, Defendant Woodson should be dismissed from this suit for a failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

**D.    Because Plaintiff voluntarily consented to the search; therefore, her Fourth and Fifth Amendment rights were not violated and these claims should be dismissed.**

When analyzing the constitutionality of Plaintiff's strip search, the first question to address is whether the search was conducted with her consent.  If so, it was constitutionally sound.

"A reasonable suspicion standard applies to strip searches of prison visitors."  *U.S. v. Johnson,* 1994 U.S. App. LEXIX 14701 *6 (4ᵗʰ Cir. 1994) (citing *Daugherty v. Campbell*, 935 F.2d 780, 787 (6th Cir. 1991), cert. denied, 117 L. Ed. 2d 110, 60 U.S.L.W. 3498, 112 S. Ct. 939 (U.S. 1992); *Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir. 1982)).  With respect to the question of consent, the Eastern District of Virginia has held that, in an analogous action under § 1983, "the burden of proving involuntary consent rests on the plaintiffs."  *Amato v. City of Richmond*, 875 F. Supp. 1124, 1133 (E.D. Va. 1994).  Even though, in a criminal context, the government usually bears the burden of proving voluntary consent, this is so because "that is part of the burden allocated to it."  *Id.* at 1134.  "In the civil context, however, the plaintiff has the burden to prove all elements of the claim."  *Id.*  Thus, the *Amato* court reasoned that, once the defendants had established proof of consent, the burden was on the plaintiff to prove that the consent was not voluntary.

Plaintiff alleges in her own Complaint, that Defendants observed her on camera trying to unbutton her pants, that Defendants stated to her that people like to bring drugs into ACC, and that she read, signed, and dated a consent form for the strip search; therefore, it is clear that the alleged search was conducted under reasonable suspicion and with the Plaintiff's consent.

While Plaintiff attempts to allege that her consent was involuntary, there are no facts presented that support that any of the Defendants coerced her into being searched. Plaintiff does

not pose any allegations that any actions of the Defendants caused her to involuntary consent to the search.  Defendants advised Plaintiff that she had a choice of whether or not to consent to the search, but Plaintiff decided on her own accord to consent to the search any way.  *See* Compl. ¶¶ 52 -58.  Plaintiff tries to argue that she felt like she had no choice but to sign the consent, but her own allegations do not support this contention.  It is clear from Plaintiff's Complaint that she was given a choice as to whether she wanted to consent to the search or leave the facility, and she chose to consent to the search.

Plaintiff's voluntary consent to the strip search of her person render her Fourth and Fifth Amendment claims invalid, and these claims against Defendants should be dismissed for the reasons stated herein.

**E.      Plaintiff claims of violation of her Virginia Constitution and State Law rights should also be dismissed, as under the allegations as set forth in the Complaint, Defendants retain immunity.**

Virginia Code § 19.2-59, provides in pertinent part, as follows:  "No officer of the law or any other person shall search any place, thing or person, except by virtue of and under a warrant issued by a proper officer. . . . Any officer or person violating the provisions of this section shall be liable to any person aggrieved thereby in both compensatory and punitive damages."

Plaintiff's Complaint alleges that the search in question was in violation of her rights to be free from unreasonable search and seizure, her due process rights, and constituted an unlawful custodial strip search in violation of Article 1, Section 10 of the Virginia Constitution and Virginia Code § 19.2-59.1.

To the extent that the Complaint attempts to allege a cause of action against the Defendants in their individual capacities, those claims fail.  As the Virginia Supreme Court has explained, Code § 19.2-59 "does not create a cause of action against a private entity or an

individual." *Buonocore v. Chesapeake & Potomac Tel. Co. of Va.*, 254 Va. 469, 473, 492 S.E.2d 439, 441 (1997). Because "only law enforcement officers and other governmental agents" who "can be found guilty of malfeasance in office" may be liable under Code § 19.2-59, it follows that a cause of action under this statute will lie only against individuals acting in their official capacities.

To the extent that the Complaint alleges a cause of action against the named Defendants in their official capacities, those Defendants are entitled to the defense of sovereign immunity. Each named Defendant is, or was at the time the cause of action arose, an employee of the Commonwealth. To ascertain whether these Defendants may be protected by sovereign immunity, the Court will "examine the function this employee was performing and the extent of the state's interest and involvement in that function. Whether the act performed involves the use of judgment and discretion is a consideration, but it is not always determinative. Virtually every act performed by a person involves the exercise of some discretion. Of equal importance is the degree of control and direction exercised by the state over the employee whose negligence is involved." *James v. Jane*, 221 Va. 43, 53, 267 S.E.2d 103, 108 (1980).

In the context of Code § 19.2-59, the Eastern District of Virginia has held that "[o]nly the constitutional standard of conduct . . . should apply for purposes of determining sovereign immunity in actions brought under section 19.2-59." *Burnham v. West*, 681 F. Supp. 1169, 1173 (E.D. Va. 1988). Thus, a plaintiff alleging a violation of § 19.2-59 must show "that defendants knew or should have known that their searches would violate the constitutional rights of the [individual] searched, or that the purpose of the searches was outside defendants' [] responsibilities, or that defendants undertook the searches with malicious intent . . . ." *Id.*

Absent that showing, a state employee's conduct—even if done in violation of Code § 19.2-59—constitutes "simple negligence" for which the employee will retain immunity. *Id.*

Turning to the facts of the case at hand, there are no allegations in Plaintiff's Complaint that establish that Defendants knew or should have known the search would violate Plaintiff's constitutional rights, that the search was outside of Defendants' responsibility, or that Defendants' conducted the search with malicious content. Here, Plaintiff has actually established the opposite. While Plaintiff maintains that she was fearful before and after the search, her Complaint clearly shows that Defendants advised her of her rights, the reason for why she was searched, and obtained her voluntary consent. Plaintiff even goes on to allege that Defendants were apologetic to her after the search and allowed her to continue with her visit. Compl. ¶¶ 83-84. It is also important to note that the named Defendants were not the actual officers who conducted the search. Defendants cannot be held to have unlawfully conducted a search that they did not personally conduct.

In accordance with the foregoing, the state law claims by Plaintiff have been insufficiently pled. Therefore, Defendants should retain their immunity and these claims against Defendants should be dismissed.

**F.      Plaintiff has not set forth any allegations that any of the alleged actions by the Defendants placed her in imminent fear of bodily; therefore, this claim should be dismissed.**

The fifth count of the complaint alleges common law assault against all Defendants. In this count, Plaintiff alleges that Defendants accused Plaintiff of a crime by threat of force and placed her in fear of imminent bodily harm. Compl. ¶ 140.

The common law tort of assault requires proof that the defendant: (1) engages in an overt act intended to inflict bodily harm, coupled with the present ability to inflict such harm, or (2)

"engages in actions intended to place the victim in fear of bodily harm," thereby creating "a well-founded fear in the victim." *Carter v. Commonwealth*, 269 Va. 44, 47, 606 S.E.2d 839, 841 (2005).

Here, other than the Plaintiff's conclusory allegations, there is no evidence that any of the Defendants conducted the strip search with the intent to place the Plaintiff in the fear of bodily harm. The mere fact that she was subjected to a strip search is not sufficient to establish that she was reasonably and justifiably afraid of imminent physical injury. Therefore, this count should be dismissed.

**G.     Plaintiff has failed to sufficiently state a false imprisonment against Defendants because she was free to leave and consented to the strip search; therefore, this claim should be dismissed.**

The next count of the complaint alleges a common law claim of false imprisonment. Here, Plaintiff alleges that she was detained and confined in order for Defendants to conduct a strip search. *See* Compl. ¶¶ 143-148. But Plaintiff also alleges that she was informed that she could leave the facility without being searched and that she consented to the strip search. *See* Compl. ¶¶ 52, 58. In light of Plaintiff's ability to leave and consent to the search, her false imprisonment claim against Defendants fails.

In Virginia, false imprisonment is "the direct restraint by one person of the physical liberty of another without adequate legal justification." *W. T. Grant Co. v. Owens*, 149 Va. 906, 921, 141 S.E. 860 (1928). "[T]he gist of the action is the illegal detention of the person, without lawful process, or the unlawful execution of lawful process." *Montgomery Ward v. Wickline*, 188 Va. 485, 489, 50 S.E.2d 387 (1948). "To maintain an action for false imprisonment is not necessary to show malice, ill will or the slightest wrongful intention, and neither the good faith

of a defendant nor that of his employee will defeat a plaintiff's right to recover." *Zayre of Va., Inc. v. Gowdy*, 207 Va. 47, 51, 147 S.E.2d 710, 713 (1966).

Here, the initial determination is whether (and when) the Plaintiff was actually "imprisoned."   A simple investigatory detention (or "seizure") does not necessarily equate to "imprisonment" for purposes of establishing this claim.  Rather, the question is whether "a person is under a reasonable apprehension that force will be used unless he willingly submits, and he does submit to the extent that he is denied freedom of action . . . ."  *Id.*; *see also W.T. Grant Co.*, 149 Va. at 921, 141 S.E at 865 ("[F]alse imprisonment is a wrong akin to the wrongs of assault and battery, and consists in imposing by force or threats an unlawful restraint upon a man's freedom of locomotion." (internal quotations omitted)).

Here, there is no evidence that the Plaintiff asked if she could leave when she was first approached by the officers, nor did she object.  Rather, the evidence will be that she voluntarily consented to being searched.  She was not handcuffed, placed in a room, or otherwise told that she was not free to go.  Although the strip search, did involve some restraint on her liberty, that is not the determinative inquiry for a false imprisonment claim.  Rather, the question is whether she actually and reasonably believed that she would be forcibly detained and strip searched if she did not submit.  Accordingly, she was not "imprisoned" during the period of time that the strip search was conducted.

Therefore, this claim against Defendants should also be dismissed.

## H.    Plaintiff has failed to state a claim for intentional infliction of emotional distress against Defendants; therefore, this claim should also be dismissed.

Lastly, Plaintiff is attempting to bring a claim for intentional infliction of emotional distress against Defendants.  Plaintiff alleges that the strip search she consented to was demanded by Defendants, which the specific  intent of inflicting emotional distress.  *See* Compl.

14

¶¶ 149-159.

In order to establish a claim of intentional infliction of emotional distress, a plaintiff must establish:  (1) that the wrongdoer's conduct was intentional or reckless, (2) that the conduct was outrageous or intolerable, (3) that there was a causal connection between the wrongdoer's conduct and the resulting emotional distress, and (4) that the resulting emotional distress was severe.  *Supervalu, Inc. v. Johnson*, 276 Va. 356, 370, 666 S.E.2d 335, 343 (2008).  "[T]he tort of intentional infliction of emotional distress is 'not favored' in the law, because there are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury." *Id.*  As a result, the standard of proof for a claim alleging intentional infliction of emotional distress is clear and convincing evidence.  *Id.*

Nothing in the factual allegations set forth in Plaintiff's Complaint support a claim for intentional infliction of emotional distress.  Plaintiff's allegations merely states that she was confused and frightened by what was going on, but none of the allegations raised establish that Defendants' conduct was intentional or reckless, nor was their conduct outrageous or intolerable. According to Plaintiff's own Complaint, the search was conducted under reasonable suspicion, in accordance with protocol, and with Plaintiff's consent.  Plaintiff even goes on to allege that Defendants were apologetic after and further explained to her why she was asked to be searched. The most important factor is that Plaintiff had the ability to leave the facility and not be searched, but Plaintiff chose to consent to the search.  Therefore, there is absolutely no basis for a claim of intentional infliction of emotional distress against Defendants, and this claim should be dismissed.

## **DAMAGES AND IMMUNITIES**

### A.   **Defendants named in their official capacities.**

15

To the extent that Plaintiff is attempting to bring a suit under § 1983 against the Defendants in their official capacity for monetary damages, this is not cognizable in § 1983. Neither a state nor its officials acting in their official capacities are persons for purposes of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Therefore, to the extent that Plaintiff is suing the Defendants in their official capacity; they are immune from suit in this matter. *Id.*

**B.    Defendants are entitled to qualified immunity.**

Moreover, Defendants are also entitled to the defense of qualified immunity. Even when all the allegations of the complaint are construed as true, these defendants were not on reasonable notice that their alleged conduct might violate a clearly established constitutional right.

Government officials, performing discretionary functions, are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). The purpose of the doctrine is to protect officers in the performance of their duties unless they are "plainly incompetent" or "they knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 342 (1986). Because "[t]he privilege is an *immunity from suit* rather than a mere defense to liability," questions of immunity ought to be resolved "at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (internal quotations omitted).

When evaluating a claim of qualified immunity, courts must first ascertain "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If so, the second inquiry is whether the defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. "The unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law."

*Lopez v. Robinson*, 914 F.2d 486, 489 (4th Cir. 1990); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, as discussed above, Defendants did not engage in any conduct that violated Plaintiff's constitutional rights.  Absent a constitutional violation, they are entitled to qualified immunity.  Moreover, even if the Court were to assume that a constitutional violation occurred, neither of these Defendants acted in a manner that would have put him on notice that his conduct was violating a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.  Accordingly, Defendants are entitled to qualified immunity, and the claims against them should be dismissed.

## CONCLUSION

In accordance with the foregoing, the Commonwealth of Virginia is entitled to Eleventh Amendment immunity, and the VTCA claim against the Commonwealth and other named Defendants should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. Since the remaining allegations of the Complaint do not state a plausible claim for relief against Defendants, they are entitled to qualified immunity and the claims against them should also be dismissed.

WHEREFORE the Defendants respectfully request that this Court grant their motion, dismiss the complaint, and grant any and other such further relief as it may deem just.

Respectfully submitted,

COMMONWEALTH OF VIRGINIA, J.A.
WOODSON, N. SHIRES, B.J. LOKEY, J.L.
BROWN and LT. E.O. HOSKIE

By:     s/  Jessica Berdichevsky
        Jessica Berdichevsky, AAG, VSB #80015
        Criminal Justice & Public Safety Division
        Office of the Attorney General
        202 North 9th Street
        Richmond, Virginia 23219
        (804) 371-4482
        (804) 786-4239 (Fax)
        Email:  jberdichevsky@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of February, 2017, I electronically filed the foregoing

Memorandum in Support of Defendants' Motion to Dismiss with the Clerk of the Court using the

CM/ECF system, which will send a notification of such filing (NEF) to the following: Chris

Okay, Esq., P.O. Box 3089, 13 W. Beverley Street, 2nd Fl. Staunton, VA 24402, email:

chrisokay@icloud.com, and I hereby certify that I have mailed the document by United States

Postal Service to the following non-filing user:  N/A

By:     s/  Jessica Berdichevsky
        Jessica Berdichevsky, AAG, VSB #80015
        Criminal Justice & Public Safety Division
        Office of the Attorney General
        202 North 9th Street
        Richmond, Virginia 23219
        (804) 371-4482
        (804) 786-4239 (Fax)
        Email:  jberdichevsky@oag.state.va.us